**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| BRANDON MOYTE,<br><br>Plaintiff,<br><br>v.<br><br>Cheyenne Police Department Officer Zabriskie (FNU), in his individual capacity,<br><br>and<br><br>Cheyenne Police Department Officer Lecaire (FNU), in his individual capacity,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:26-cv-339 |

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

---

COMES NOW, Plaintiff, Brandon Moyte, by and through undersigned counsel, and hereby files this Complaint against the above-named Defendants and demands a trial by jury to decide the following claims for relief. For his claims of relief against Defendants, Plaintiff alleges the following:

## SUMMARY OF CLAIMS

1) Plaintiff Brandon Moyte's claims against Defendants arise under 42 U.S.C. § 1983.

2) Defendant Zabriskie and Defendant Lecaire, Cheyenne Police Department (CPD) Officers at the time of the incident, violated Mr. Moyte's Federal Constitutional right to be free from unreasonable seizure – specifically, the right to be free from excessive force – when, as on-duty CPD officers acting under color of state law and during a DUI investigation, they shattered Mr. Moyte's right tibia into multiple pieces, severed a major artery in Mr. Moyte's right leg, and severely tore the ligaments surrounding his right knee.

3) These severe injuries required immediate life-saving surgery to reconnect Mr. Moyte's popliteal artery, and several other major surgeries over the course of a year in an attempt to save and repair Mr. Moyte's leg and knee.

4) Despite these major medical procedures, surgeries, and efforts, Mr. Moyte has lasting and permanent damage to his leg that causes immobility, pain and suffering, all of which interfere with his ability to work and enjoy life.

5) As a result of this excessive force utilized by Defendants Zabriskie and Lecaire, Mr. Moyte suffered extreme physical pain, loss of enjoyment of life, inability to work, mental and emotional distress, loss of income, incurred medical expenses, and suffered other economic and non-economic damages.

6) The force employed by Defendants Zabriskie and Lecaire against Mr. Moyte was unlawful and excessive in violation of Mr. Moyte's rights granted by the Fourth Amendment to the United States Constitution to be free from unreasonable seizures.

**PARTIES, JURISDICTION, AND VENUE**

7) Plaintiff Brandon Moyte is an individual residing in Cheyenne, Laramie County, Wyoming.

8) At the time of the incident, Defendant Zabriskie was an employee and officer of the Cheyenne Police Department, a local governmental law enforcement agency located in Laramie County, State of Wyoming, and District of Wyoming.

9) At the time of the incident, Defendant Zabriskie was on-duty for CPD and acting under color of state law.

10) At the time of the incident, Defendant Lecaire was an employee and officer of the Cheyenne Police Department, a local governmental law enforcement agency located in Laramie County, State of Wyoming, and District of Wyoming.

11) At the time of the incident, Defendant Lecaire was on-duty for CPD and acting under color of state law.

12) All incidents occurred in Cheyenne, Laramie County, Wyoming.

13) This Court has personal jurisdiction over all Defendants, as they all worked or had their principal place of business in the District of Wyoming at the time of the incident and the incident took place in the District of Wyoming, thereby satisfying personal jurisdiction.

14) This Court has subject matter jurisdiction over the claim, as it presents a federal question under 42 U.S.C. § 1983. Article III, § 2 of the United States Constitution provides that federal judicial power shall extend to all cases "arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." This constitutional provision authorizes Congress to give federal courts such jurisdiction. The congressional grant of federal question jurisdiction is codified at 28 U.S.C. § 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

15) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as "a substantial part of the events" on which this claim is based occurred in Cheyenne, Wyoming, which is in the District of Wyoming.

## FACTS

16) On November 5, 2024, at 5:56 pm in Cheyenne, Wyoming, Wyoming Highway Patrol Trooper Rebecca Monnett conducted a traffic stop of Mr. Moyte's vehicle, suspecting him of driving under the influence.

17) During the traffic stop, Mr. Moyte admitted to Trooper Monnett he had been drinking.

18) During the traffic stop, according to Trooper Monnett, Mr. Moyte failed the horizontal gaze nystagmus test.

19) During the traffic stop, Mr. Moyte lost his balance and failed to complete the walk and turn test and told Trooper Monnett to arrest him.

20) At 6:17 pm, Trooper Monnett arrested Mr. Moyte for driving under the influence. In doing so, Trooper Monnett handcuffed Mr. Moyte behind his back and placed him in her patrol car without physical resistance by Mr. Moyte.

21) At 6:18 pm, Trooper Monnett read Mr. Moyte the Wyoming "implied consent" advisements, and Mr. Moyte refused to submit to chemical testing.

22) Trooper Monnett then applied for a remote search warrant to draw Mr. Moyte's blood.

23) Trooper Monnett transported Mr. Moyte to the Cheyenne Regional Medical Center (CRMC) for the blood draw.

24) At 6:46 pm, the remote search warrant was granted to draw Mr. Moyte's blood.

25) At CRMC in a vehicle bay, Mr. Moyte was advised a judge had issued a search warrant to draw Mr. Moyte's blood. At this time, Mr. Moyte was seated on a chair with his hands handcuffed behind his back.

26) Mr. Moyte stated he did not consent to a blood draw and stood up from the chair. Officers pushed him back down into the chair.

27) Mr. Moyte was informed he could either consent or the officers would put him face down on the ground to draw his blood. Mr. Moyte again stood up and stated, "Face down baby, let's go."

28) At the time he made this statement, Mr. Moyte was still handcuffed with his hands behind his back and made no aggressive move towards any officer.

29) At this time, Defendants Zabriskie and Lecaire grabbed Mr. Moyte and leveraged their bodies in such a way as to wedge Mr. Moyte's right leg into a locked position while forcing Mr. Moyte's upper body forward with such force that Mr. Moyte's right leg bent completely in half in the wrong direction at the knee joint, completely shattering Mr. Moyte's right tibia, severely tearing the ligaments in Mr. Moyte's knee, and severing a major artery in Mr. Moyte's leg.

30) Mr. Moyte screamed in agony and went limp on the floor.

31) Wyoming Highway Patrol Trooper Jason Simmer noticed Mr. Moyte's leg and condition and immediately called for a gurney.

32) All of the above incidents are captured on video.

33) Immediately following the use of force, Mr. Moyte was taken directly to the emergency room at Cheyenne Regional Medical Center for x-rays and a CT angiogram, as Mr. Moyte had no pulse in his right foot.

34) The imaging revealed a completely severed popliteal artery, a completely dislocated femur and tibia, a shattered tibial plateau, bone fragments floating and trapped in the center of the knee, and severely torn and disrupted major knee ligaments.

35) Due to the severity of Mr. Moyte's condition, Mr. Moyte was sent to the operating room at 8:41pm, where an emergency life-saving surgery began, lasting until 2:00 am on November 6, 2024.

36) During the emergency surgery, the surgeon noted "the popliteal artery appeared transected." The surgeon could not locate the popliteal artery due to the "significant hematoma and transection with retraction of the stump."

37) During the emergency surgery, the surgeon performed an arterial bypass in order to connect the femoral artery to the severed popliteal artery in Mr. Moyte's leg.

38) The surgeon also noted that the top part of Mr. Moyte's shinbone was shattered into multiple pieces.

39) The surgeon further noted that the ligaments surrounding Mr. Moyte's knee were severely torn.

40) Ultimately, a total of five major surgeries over the course of one year would be performed in an attempt to save Mr. Moyte's leg and knee.

41) On November 11, 2024 a second major surgery was performed in an attempt to repair Mr. Moyte's knee fracture and ligaments. During that surgery, the surgeon noted a "complete transection of the common peroneal nerve – irreparable; displaced medial plateau fracture; complete rupture of ACL and PCL; complete rupture of posterior lateral corner; lateral meniscus with near complete separation from the capsule; and a possible medial meniscus tear." The surgeon used a lateral plateau plate and four rafting locking proximal screws and three distal cortical screws and a fiber tape suture and bone tunnels to repair the primary LCL and PCL, all in an attempt to stabilize Mr. Moyte's knee, which had been completely shattered.

42) The surgeries of November 6, 2024 and November 11, 2024, while life-saving and largely successful in stabilizing Mr. Moyte's leg and knee, were unable to repair the peroneal nerve, which controls lifting the foot and gives feeling to the top of the foot and outer lower leg.

43) On November 15, 2024, a third major surgery was conducted in order to graft skin from Mr. Moyte's anterior lateral right thigh to cover the two wounds on Mr. Moyte's leg and knee that were each eight by four inches, measuring a combined 400 square centimeters.

44) Following these major surgeries, Mr. Moyte suffered significant post-traumatic arthritis with significant osteophyte formation about the knee. According to his surgeon, Mr. Moyte was "quite debilitated by his symptoms," and "conservative management in clinic" failed to relieve his symptoms. As such, the surgeon recommended a total knee replacement.

45) On June 18, 2025, a fourth surgery was performed to remove the hardware from Mr. Moyte's tibia in order to prepare him for a total knee replacement.

46) On September 24, 2025, a fifth major surgery was performed to conduct a total knee replacement of Mr. Moyte's right knee. During the surgery the surgeon noted "significant osteophytes as well as tricompartmental arthritis," a "moderate-sized anteromedial tibial defect," "extensive heterotopic bone," a "diminutive ACL," and "extensive scar tissue."

47) Totally replacing a right knee at Mr. Moyte's young age of thirty four will likely lead to further complications and surgeries later in his life.

48) These surgeries have left Mr. Moyte with extensive scarring, including two long fasciotomy and skin-graft scars on the lower leg, a thigh donor site, multiple knee incisions, and a vein-harvest site on the left leg.

49) Over the last two years and between and among these major surgeries aimed at saving Mr. Moyte's right leg and knee, Mr. Moyte has attended various

pre-operation and post-operation appointments, as well as various physical therapy appointments in an effort to rehabilitate his knee.

50) During and among these major surgeries and rehabilitative efforts, Mr. Moyte has experienced extreme physical pain.

51) The extreme physical pain has caused Mr. Moyte to lose sleep, often waking in the middle of the night to submerge his entire right leg in an ice bath.

52) Mr. Moyte, a plumber and contractor by trade who owned his own business at the time of this incident, was not able to work as a result of the injuries to his leg for an extensive period of time and lost a significant amount of income. Ultimately, Mr. Moyte was forced to close his business. Mr. Moyte was unable to find other work until his conditions improved from the multiple injuries and major surgeries.

53) Because of the loss of income and the inability to walk or move normally, Mr. Moyte was unable to contribute to his household, including being unable to provide an income, care for himself, or care for his children. Since the incident in this case, Mr. Moyte and his family have experienced the electricity, heat, and water to their home being turned off, unable to pay his bills. Through various programs, Mr. Moyte was able to have the electricity, heat, and water turned on again in his home.

54) Mr. Moyte was also unable to pay his mortgage, although his mortgage company allowed Mr. Moyte a grace period from paying the mortgage while he suffered from these injuries and was unable to work, in order to stay in his home.

55) Mr. Moyte was forced to eat a limited diet and find scrapped and abandoned furniture to refurbish and sell in order to be able to eat.

56) Ultimately, Mr. Moyte's wife left him and filed for divorce.

57) Despite all the surgeries and rehabilitative efforts, this incident has caused Mr. Moyte to suffer from a condition called "foot drop" due to the unrepairable peroneal nerve, which means that he cannot flex his right foot upward, causing his foot to drag or slap against the ground while walking. This is a permanent, uncurable condition that causes Mr. Moyte to wear a brace and hinders his ability to work as a plumber and/or contractor.

58) As a result of this incident, Mr. Moyte has sustained injuries, including past and future physical harm, and past and future emotional and mental harm, including fear, humiliation, and mental anguish.

59) These injuries have resulted in past and future medical expenses and loss of past and future income.

60) These injuries have caused Mr. Moyte to suffer economic damages – including loss of past and future income and medical expenses – and non-

economic damages, including emotional pain and distress, physical pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

## CLAIMS FOR RELIEF

### I. FIRST CLAIM FOR RELIEF – DEPRIVATION OF FOURTH AMENDMENT RIGHT UNDER 42 U.S.C. § 1983 – EXCESSIVE FORCE – DEFENDANT ZABRISKIE

61) For this Claim of Relief, Plaintiff incorporates the facts stated herein, which provide the basis for the claim that Defendant Zabriskie, while on-duty and acting under color of State law, statute, ordinance, regulation, custom, or usage of the State of Wyoming, deprived Brandon Moyte, Plaintiff and a citizen of the United States and person within the jurisdiction thereof, of Mr. Moyte's rights, privileges, or immunities secured by the United States Constitution and federal laws, to wit:

62) Defendant Zabriskie, while on duty as a CPD Officer, deprived Mr. Moyte of his Fourth Amendment right to be free of unreasonable seizures, specifically not to be subjected to excessive force, by shattering Mr. Moyte's right leg and knee and severing a major artery in Mr. Moyte's right leg during a DUI investigation.

63) This deprivation caused Mr. Moyte injury and damages in an amount to be determined at trial.

64) 42 U.S.C. §1983 makes Defendant Zabriskie liable to Mr. Moyte in an action at law, suit in equity, or other proper proceeding for redress for a violation of Mr. Moyte's Fourth Amendment right to be free from unreasonable seizures, namely excessive force.

PUNITIVE DAMAGES-

65) Defendant Zabriskie acted maliciously and wantonly, with malice, recklessness, and/or callous indifference, justifying, in addition to compensatory damages, punitive damages in this case.

**II. SECOND CLAIM FOR RELIEF – DEPRIVATION OF FOURTH AMENDMENT RIGHT UNDER 42 U.S.C. § 1983 – EXCESSIVE FORCE – DEFENDANT LECAIRE**

66) For this Claim of Relief, Plaintiff incorporates the facts stated herein, which provide the basis for the claim that Defendant Lecaire, while on-duty and acting under color of State law, statute, ordinance, regulation, custom, or usage of the State of Wyoming, deprived Brandon Moyte, Plaintiff and a citizen of the United States and person within the jurisdiction thereof, of Mr. Moyte's rights, privileges, or immunities secured by the United States Constitution and federal laws, to wit:

67) Defendant Lecaire, while on duty as a CPD Officer, deprived Mr. Moyte of his Fourth Amendment right to be free of unreasonable seizures, specifically not

to be subjected to excessive force, by shattering Mr. Moyte's right leg and knee and severing a major artery in Mr. Moyte's right leg during a DUI investigation.

68) This deprivation caused Mr. Moyte injury and damages in an amount to be determined at trial.

69) 42 U.S.C. §1983 makes Defendant Lecaire liable to Mr. Moyte in an action at law, suit in equity, or other proper proceeding for redress for a violation of Mr. Moyte's Fourth Amendment right to be free from unreasonable seizures, namely excessive force.

PUNITIVE DAMAGES-

70) Defendant Lecaire acted maliciously and wantonly, with malice, recklessness, and/or callous indifference, justifying, in addition to compensatory damages, punitive damages in this case.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants, upon each of Plaintiff's claims and grant:

(a) Compensatory and consequential damages, including both economic and non-economic damages allowed by law, including but not limited to damages for loss of past and future income, past and future medical expenses, past and future

physical injury, mental anguish, emotional distress, embarrassment, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(b) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(c) Attorney's fees and the costs associated with this action, as well as expert witness fees, on all claims allowed by law, including 42 U.S.C. § 1988;

(d) Pre- and post-judgment interest at the lawful rate to the maximum extent allowed by law;

(e) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 4th day of November 2026.

Devon W. Petersen
Wyoming State Bar #6-4480
Fleener Petersen, LLC
P.O. Box 173
Cheyenne, WY 82003
(307) 460-4333
devon@fleenerlaw.com
ATTORNEY FOR PLAINTIFF